1
2
3
4
5
6
7
8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES CHATMAN,

11          Plaintiff,                    No. CIV S-06-0578 MCE EFB P

12      vs.

13   R. JOHNSON, et al.,
                                          ORDER AND
14          Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16         Plaintiff, a prisoner proceeding pro se, brought this action under 42 U.S.C. § 1983 for

17   alleged civil rights violations.  The case is before the court on defendants' motion for summary

18   judgment.  Plaintiff has not filed an opposition to the motion.  Instead, on April 11, 2008, he

19   filed a request pursuant to Fed. R. Civ. P. 56(f) to continue the motion.  For the reasons

20   explained below, plaintiff's Rule 56(f) request is denied and it is recommended that the motion

21   for summary judgment be granted.[1]

22         This action proceeds on the September 20, 2006, verified amended complaint.  The

23   claims remaining in this action are the following: (1) on July 8, 2004, Kramer allegedly jumped

24   across a table and attacked plaintiff; (2) defendants Kramer and St. Andre allegedly kicked

25   _____

26         [1] Defendants' motion included a request for judicial notice of official court records from
     case files in this and other federal district courts.  As explained below, that request is granted.

                                          1

plaintiff's legs from underneath him; (3) Kramer, St. Andre, Davey and Dittman allegedly dragged plaintiff across the room to a holding cage; (4) Davey allegedly ignored a health condition justifying plaintiff being restrained in a waist-chain instead of handcuffs and handcuffed plaintiff behind his back in violation of the Eighth Amendment; (5) thereafter, defendant Kalbach allegedly rolled plaintiff onto his stomach, shackled his ankles and sat on plaintiff's legs while pulling his feet backwards into an "arm lock;" (6) defendant Davey allegedly sat on plaintiff's back and rocked back and forth so as to deprive plaintiff of oxygen, ignored plaintiff's cries for help, laughed, threatened plaintiff with death while laughing and joking with subordinates; (7) defendant Johnson  allegedly entered the room and ordered Kramer to take Davey's position; (8) Kramer, St. Andre, Erlich, Fleming and Dittman allegedly took turns rocking back and forth on plaintiff's back; (9) defendants Kalbach, Williams, and Bortle allegedly each took a turn sitting on plaintiff's legs while pulling back plaintiff's legs; (10) plaintiff  allegedly told defendant Dr. James about chronic back and shoulder pain resulting from the attack, but Dr. James refused to evaluate or acknowledge plaintiff's condition in violation of the Eighth Amendment; and, (11) on February 14, 2005, defendants Sears and Wright allegedly entered plaintiff's cell, censored and confiscated plaintiff's papers related to a pending lawsuit, and stole items of plaintiff's property and destroyed others in retaliation for plaintiff's having filed grievances against other officers.

## I.    Request for Judicial Notice

Defendants ask that judicial notice be taken of records from cases plaintiff has filed in the federal courts.  Plaintiff does not oppose the request and it appears the judicial notice is appropriate here.

A federal court may take judicial notice of adjudicative facts.  Fed. R. Ev. 201(a)-(c). Judicial notice may be taken of the records of this or other courts for the facts that those records represent.  *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (court may take judicial notice of dismissal and ground therefore, but not of disputed facts therein).  The records

defendants want judicially noticed are from three cases that plaintiff was pursuing in this and one other federal court at the time defendants Sears and Wright searched his cell.  The records show what had been filed and when and the orders issued by the court in each of the three cases. They are relevant to the defense of plaintiff's claim that defendants Sears and Wright violated plaintiff's right of access to the courts by confiscating materials relevant to those actions.  The records consist of and constitute adjudicative facts relevant to defendants' motion for summary judgment.  Thus, the request must be granted.

## II.   Facts

At all times relevant to this action, plaintiff was a prisoner at High Desert State Prison ("HDSP")[2].  Am. Compl., § 5.  Plaintiff receives care through the Mental Health Delivery System ("MHDS").  Defs.' Mot. for Summ. J., Attach. 2, Defs.' Stmt. of Undisp. Facts ("SUF") 25.  Defendants Kramer, Davey, St. Andre, Dittman, Kalbach, Erlich, Fleming, Givich and Bortle were guards at HDSP.  Am. Compl. IV, V.  Defendants Cox and James were physicians there.  *See* Am. Compl., at ¶¶ 32–34; SUF 47.

On July 3, 2004, plaintiff was housed in C Facility in a building where Guillen[3] was assigned.  Defs.' SUF 4.  Plaintiff was not on good terms with Guillen, and wanted to be moved away from where he worked.  SUF 4, 5.  Thus, on July 8, 2004, plaintiff refused to return his breakfast tray to protest the location of his housing and to obtain an opportunity to request that he be housed farther away from Guillen.  SUF 5.  Plaintiff knew that withholding his food tray would gain the attention of the guards on duty.  SUF 6.  The tactic worked, and plaintiff was informed that he could discuss the matter with defendant St. Andre in the C Facility program

---

[2]  The court concludes that plaintiff's complaint is sufficient to serve as an affidavit for purposes of summary judgment.  To function as an affidavit on summary judgment, a verified complaint must be based on personal knowledge and set forth specific facts admissible in evidence.  *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).  Here, plaintiff's allegations are detailed.

[3]  Plaintiff named Guillen as a defendant.  However, on September 25, 2007, the court dismissed all claims against him.

office.  SUF 7.  Plaintiff then returned the tray.  *Id*.  He was placed in a waist-chain, as opposed to handcuffs, and escorted to the program office, where he met with St. Andre at about 7:50 a.m.  SUF 7, 8; Defs.' Mot. for Summ. J., Attach. C, "Evidence in Support of Motion for Summary Judgment" ("Defs.' Ev."), Ex. 8.

The parties agree that in the program office, plaintiff expressed his desire to be moved, and defendant St. Andre ordered plaintiff to return to his assigned cell.  SUF 8, 9.  However, here their versions of events diverge.  Defendants have submitted evidence that plaintiff refused.  SUF 10.  St. Andre ordered guards to place plaintiff into a holding cell.  SUF 12.  Plaintiff refused to move, and wrapped his legs around the legs of the chair in which he was sitting.  SUF 10, 13.  Thus, at around 8:05 a.m., defendants Erlich, Dittman, Kramer and Bortle used force to move him.  Erlich took plaintiff by the left upper arm, and Dittman took plaintiff by the right.  SUF 11.  Bortle disengaged plaintiff's right leg from the chair and Kramer removed the chair from beneath plaintiff.  *Id*.  The guards thus carried plaintiff from where he had been seated in the program office to a holding cell.  SUF 13.

In the verified amended complaint, plaintiff offers a strikingly different account.  He alleges that while he and St. Andre were talking, Kramer "launched across the office table into plaintiff's chest, which cause him to fall backward."  Am. Compl., at 3.  At deposition, plaintiff testified that he landed directly on his back and the back of his head hit the floor.  Defs.' Ev., Ex. 9.  He felt "temporarily paralyzed," meaning he "couldn't hardly move" his lower body.  *Id*.  Plaintiff was not sure whether he had any marks or bruises from falling backwards because no one ever fully examined him.  *Id*.  Thereafter, St. Andre, Bortle, Dittman, Ehrlich and Kramer rolled plaintiff onto his stomach and dragged him across the floor to a holding cage.  Am. Compl., at 3.

Here, the parties' versions of events re-converge.  At around 8:30 a.m., Davey told plaintiff that he had no choice but to return to his assigned cell.  SUF 16.  Plaintiff continued to refuse, and Davey ordered plaintiff handcuffed because of his continued resistence.  *Id*.  Plaintiff

1   stated that he had permission not to be handcuffed behind his back because of a medical

2   condition.  *Id*.  With his initial complaint, plaintiff submitted documents showing that he had

3   written permission to be restrained with waist-chains.  Init. Compl., Attach. B, at 3, 6.  While

4   Davey asserts in his declaration that he permitted guards to use "double-handcuffs" so as to

5   minimize the tension on plaintiff's arms, SUF 16, plaintiff alleges that Davey handcuffed him

6   behind his back with ordinary cuffs.  Am. Compl., at 3.  Once the handcuffs were applied,

7   Dittman and Kalbach attempted to take plaintiff to his cell.  SUF 17.  But plaintiff refused to

8   walk.  *Id*.  Dittman and Kalbach therefore placed plaintiff into a wheelchair.  SUF 18.  In his

9   declaration, Davey asserts that he tried to push the wheelchair, but plaintiff  resisted by putting

10  his feet on the ground to prevent the wheelchair from moving.  *Id.*  Davey thus turned the

11  wheelchair around so that he could pull it without plaintiff having any ability to impede its

12  movement.  SUF 19.  As Davey pulled the wheelchair backwards, plaintiff lunged from the

13  wheelchair.  SUF 20.  In order to prevent him from falling, Davey grabbed plaintiff by the collar

14  of his shirt.  *Id*.  In response, plaintiff stiffened his body, and tried to slip out of the wheelchair

15  feet first.  SUF 21.  Defendants Dittman and Kalbach assisted plaintiff to the floor, but plaintiff

16  kicked his feet and thrashed his body.  SUF 22.  In order to control plaintiff, Dittman rolled

17  plaintiff onto his stomach and got on top of him.  SUF 23.  Kalbach held onto plaintiff's legs and

18  applied mechanical restraints to prevent plaintiff from kicking.  *Id*.  Plaintiff concedes that he

19  could not see who was on top of him.  SUF 24.  Plaintiff was not conscious of how long he was

20  on the floor, but estimates that it was no longer than 45 minutes.  *Id*.  A licenced clinical social

21  worker interviewed plaintiff while he was on the program office floor.  SUF 25.  The social

22  worker believed that plaintiff was aware of his choices and the consequences thereof.  *Id*.

23      With the initial compliant, plaintiff submitted a copy of the incident report that defendant

24  Kalbach completed the day of the incident giving rise to this action.  In it, Kalbach states that he

25  and Dittman placed plaintiff into the wheelchair and that they (as opposed to Davey) were the

26  ones pushing it.  Init. Compl., Attach. A, at 70.  Kalbach's account, however, agrees that plaintiff

1   attempted to impede its progress by planting his feet on the ground in front of him.  *Id.*  Kalbach

2   reported that he turned the wheelchair around and as he attempted to pull it, plaintiff pushed

3   himself out of the chair and onto the floor, and began kicking his feet.  *Id.*  Defendants Erlich

4   and Dittman rolled plaintiff onto his stomach and Kalbach applied mechanical restraints to

5   plaintiff's feet.  *Id.*  Immediately thereafter, Erlich directed Kalbach to put on protective gear to

6   prepare for a "tactical use of force."  *Id.*

7        At deposition, plaintiff explained that he could not see exactly who was on him at any

8   given point because his face was pressed into the floor.  Defs.' Ev., Ex. 9.  However, he was

9   fairly certain that Davey was first to be on top of him.  *Id.*  The guards took turns for intervals of

10  around five to ten minutes.  *Id.*  Plaintiff testified that various defendants had been on top of him

11  for about 30 minutes when Johnson ordered Givich to obtain a video camera.  *Id.*  While Givich

12  video recorded the events the guards held plaintiff down without, they assert, putting full weight

13  on him but still adequate to prevent him from moving.  *Id.*  Givich also taped the other guards

14  placing plaintiff in the wheelchair.  *Id.*  Plaintiff explained that at this point, he could not walk

15  because he experienced numbness in some places and tremendous pain in others.  *Id.*  These

16  symptoms generally were in his left shoulder and in his back.  *Id.*  Plaintiff further testified that

17  he could not stand.  *Id.*

18       Defendants assert that defendants Davey and Johnson determined it was necessary to

19  apply a "calculated use of force" in order to return plaintiff to his cell.  SUF 26; *see also*, Defs.'

20  Ev., Davey Decl., ¶12.  Williams, Dittman, Kalbach, St. Andre and Erlich donned Personal

21  Protective Equipment ("PPE") suits to prepare to move plaintiff.  SUF 28.  At around 8:45 a.m.,

22  Givich began to record on videotape the measures taken to restrain plaintiff and to return him to

23  his cell.  SUF 27, 28.

24       At around 9:10 a.m., a medical technical assistant ("MTA") examined plaintiff for

25  complaints of back and left leg pain, but found no injuries.  SUF 29.  The MTA asked whether

26  plaintiff would agree to be escorted to the medical clinic, and plaintiff agreed that he would.

1   Init. Compl., Attach. A, at 70.  Thus, Dittman and Williams assisted plaintiff into the wheelchair

2   and took plaintiff to the medical clinic.  *Id.*; SUF 30.  At the clinic, Dr. Cox ordered guards to

3   remove the handcuffs so that he could examine plaintiff.  Init. Compl., Attach. A, at 70.  On

4   examination, Dr. Cox concluded that plaintiff had no tenderness in his left shoulder, and minimal

5   tenderness in his back.  SUF 31.  Dr. Cox cleared plaintiff for return to his cell.  *Id.*; Init.

6   Compl., Attach. A, at 70.  Dittman and Williams took plaintiff to his cell by wheelchair, where

7   they assisted plaintiff into his lower bunk.  SUF 31; Init. Compl., Attach. A, at 71.

8       Chatman had lower back, left shoulder and left leg injuries before July 8, 2004, when this

9   incident occurred.  SUF 33.  The back and leg injuries resulted from bullet fragments lodged

10  near his spine.  *Id*.  Several years before the July 8, 2004, incident, plaintiff broke his left

11  shoulder.  *Id*.  Plaintiff had complained of these injuries to prison medical staff before the

12  incident giving rise to this action.  SUF 34.  After the incidents giving rise to this action, he did

13  not see any new marks on his left shoulder, but he felt more pain than usual.  Defs.' Ev., Ex. 9.

14  His records show that on June 25, 3003, he was examined for tenderness in his lower spine and

15  numbness in his right thigh.  SUF 34.  On June 14, 2004, he went to the clinic with severe back

16  pain, muscle spasms in his left leg and left shoulder, stiffness and soreness.  *Id*.  At deposition,

17  plaintiff conceded that he had no visible signs that defendant [who] injured his left shoulder on

18  July 8, 2004.  SUF 35.  A physician examined plaintiff on August 17, 2004, and noted that

19  plaintiff walked without a limp, could move freely in a chair, and get in and out of a chair

20  without any apparent difficulty.  SUF 36.

21      Only defendants Davey and St. Andre have submitted declarations in support of the

22  motion.  Davey asserts that none of the defendants struck plaintiff.  Defs.' Ev., Davey Decl.,

23  ¶ 17.  He states that he and other defendants simply held plaintiff down.  Davey does not

24  specifically deny plaintiff's allegation that he dragged plaintiff across the room, sat on plaintiff's

25  back and rocked back and forth and ignored plaintiff's cries for help.  Davey asserts that he used

26  the minimum amount of force he believed necessary to control plaintiff, and he believes that the

other defendants did the same.  Davey Decl., ¶ 16.  St. Andre likewise asserts that neither he nor any other guard hit plaintiff.  Defs.' Ev., St. Andre Decl., ¶ 12.  St. Andre states that he did not use any force on plaintiff.  St. Andre Decl., ¶ 11.  He states that believes the force the other defendants used was appropriate, but he does not specifically address or deny the allegation that he watched them use the force plaintiff describes in the verified amended complaint.  Defendants Erlich, Fleming and Dittman did not submit declarations and necessarily have not addressed or specifically denied that they sat on plaintiff's back rocking back and forth for about ten minutes each.  Similarly, defendants Kalbach, Williams, Givich and Bortle submitted no declarations denying the allegations as to them.  Defendant Johnson did not submit a declaration, and thus does not deny ordering Kramer onto plaintiff's back to continue Davey's alleged abuse.

On February 14, 2005, plaintiff was housed in Facility B.  SUF 40.  On that date, defendants Sears and Wright searched plaintiff's cell during facility-wide search.  *Id*.  Prison officials order such searches periodically as a security measure.  *Id*.  The property receipts made that day documenting the items taken from plaintiff's cell show that Sears and Wright took only trash and laundry.  *Id*.  These two defendants acknowledge that they broke plaintiff's soap in half to ensure that nothing was lodged in the soap.  *Id*.  The day defendants searched his cell, plaintiff had three cases pending in federal court.  *Id*.  Two of these cases were pending in the Eastern District of California, i.e., *Chatman v. Tyner*, Case No. 03-6636 AWI SMS (PC), and *Chatman v. Felker*, Case No. 03-2415 JAM KJM P.  SUF 41.  At deposition, plaintiff testified that one defendant, Dr. Rohlfing, was dismissed from *Chatman v. Felker* because plaintiff was not able to file an objection to the magistrate judge's findings and recommendations.  Def's. Ev., Ex. 9.  One was pending in the Northern District of California, i.e, *Chatman v. Early*, Case No. 03-2820 MMC.  SUF 41.  No defendants have been dismissed from *Chatman v. Early* because of the alleged loss of documents during the cell search.  SUF 44.  Additionally, plaintiff admits that he has not missed any filing dates in that action.  *Id*.  Plaintiff maintained copies of documents related to *Chatman v. Felker* in a location outside the prison.  SUF 45.  He concedes that he has

1   been able to gain access to documents taken during the search, and he has not missed any filing

2   dates in that case.  *Id*.  Neither has plaintiff missed any filing dates in *Chatman v. Tyner*.  SUF

3   46.

4   　　　　As noted above, plaintiff had injuries that caused chronic back and shoulder pain.  On

5   March 1, 2005, he requested medical attention for severe back and shoulder pain.  SUF 28.  On

6   March 6, 2005, he requested an independent medical evaluation, a knee brace, a back brace, an

7   egg-crate mattress, and medication.  SUF 49.  On March 22, 2005, Dr. James interviewed

8   plaintiff and examined his back and left shoulder.  SUF 50.  However, plaintiff was restrained in

9   a waist-chain at the time, which prevented full examination of plaintiff's shoulder.  *Id*.  Based on

10  the examination that he was able to conduct, Dr. James diagnosed plaintiff with tendonitis and

11  bursitis in the left shoulder and with chronic lower back pain.  *Id*.  He thus prescribed Tylenol

12  and recommended exercises to alleviate the pain.  *Id*.  Dr. James examined plaintiff on August

13  17, 2004, for plaintiff's complaint of left shoulder pain that was made worse during the July 8,

14  2004, incident.  Dr. James examined plaintiff's legs and ankles and lower back area.  Defs.' Ev.,

15  Ex. 5.  He found that plaintiff was able to twist and move in the chair without difficulty, and was

16  able to walk without a limp.  *Id*.

17  **III.   Rule 56(f) Request**

18  　　　　The court may deny or continue a motion for summary judgment to permit discovery

19  when an opposing party shows by affidavit that without the proposed discovery it cannot present

20  facts essential to justify the party's opposition.  Fed. R. Civ. P. 56(f).  Rule 56(f) provides:

21  　　　　Should it appear from the affidavits of a party opposing the motion that the party
    　　　　cannot for reasons stated present by affidavit facts essential to justify the party's
22  　　　　opposition, the court may refuse the application for judgment or may order a
    　　　　continuance to permit affidavits to be obtained or depositions to be taken or
23  　　　　discovery to be had or may make such other order as is just.

24  Fed. R. Civ. P. 56(f).  This standard requires the party seeking a continuance to "identify by

25  affidavit the specific facts that further discovery would reveal, and explain why those facts

26  would preclude summary judgment."  *Tatum v. City and County of San Francisco*, 441 F.3d

1090, 1100 (9th Cir. 2006).  Plaintiff's request appears directed at his allegations of excessive force; i.e., that defendants Bortle, Davey, Dittman, Erlich, Fleming, Givich, Kalbach, Kramer, St. Andre and Williams used excessive force against him and that defendant Johnson failed to protect him against this use of force.  Plaintiff asserts that a continuance is necessary while he obtains the following: (1) a July 8, 2004, log that would identify the prisoners who plaintiff alleges were initially present in the room where plaintiff was attacked, but forced to leave before the attack occurred; (2) a Fair Labor Standards Act ("FLSA") sign in/out sheet showing the name of an officer plaintiff believes was forced to leave the office before defendants attacked him; (3) documents showing where in the prison defendant Fleming was on duty July 8, 2004; (4) prison investigative reports concerning plaintiff's allegations that defendants attacked him; (5) an un-redacted copy of defendant Johnson's incident report about the attack; (6) plaintiff's administrative appeals filed concerning defendants' conduct; (7) copies of operational procedures applicable to the investigation of staff misconduct; (8) plaintiff's correspondence with prison officials concerning plaintiff's claims in this action; (9) an opportunity to review the video tape taken following defendants' attack on plaintiff; (10) the state court docket number of a case about defendant Davey's alleged involvement in covering up an investigation of misconduct at High Desert State Prison; (11) documents evidencing defendant Davey's suspension for covering up this investigation; (12) records about prisoners' complaints and lawsuits filed against the defendants; (13) a copy of plaintiff's complaint in this action and the attachments thereto.

While plaintiff has presented an extended laundry list of documents he would request in further discovery, he fails to satisfy his burden to demonstrate that any may reveal information material to his defeating summary judgment.  With respect to the investigative reports, incident reports, administrative appeals, correspondence with prison officials, a state court docket number in an unrelated action against defendant Davey, documents evidencing defendant Davey's alleged suspension, the video and records about others prisoners complaints and lawsuits filed

1  against the defendants, he does not allege what *specific facts* these items will reveal and how

2  they would defeat summary judgment.  Neither, of course, has he explained why these facts are

3  essential to oppose defendants' motion for summary judgment.  He asserts that the holding cell

4  log will identify the prisoners who defendants instructed to leave the program office before they

5  allegedly attacked plaintiff.  Because, as plaintiff alleges, the prisoners were made to leave the

6  room before the incident in question, they did not witness whatever happened.  Plaintiff does not

7  explain why the fact of their having been present and being made to leave is essential to

8  opposing the motion for summary judgment.  Neither does he allege what facts these prisoners

9  might reveal that is relevant to this action or why these facts are essential to his opposition to the

10  pending motion.

11       For like reasons, plaintiff has not satisfied his burden with respect to the documents that

12  would reveal the identity of an officer who also was made to leave the program office.  Plaintiff

13  also seeks documents that would reveal where in the prison defendant Fleming was working the

14  day he was attacked.  However, he does not explain why the location of this defendant that day is

15  essential to opposing defendants' motion.

16       As to plaintiff's assertion that he requires a copy of his complaint and the attachments

17  thereto, the court has explained in a previous order how he may obtain a copy of his complaint.

18  Plaintiff cannot delay resolution of summary judgment by continuing to assert that he lacks a

19  copy of what he previously said in his complaint while failing to take reasonable measures

20  within his control to obtain a copy.

21       For all of these reasons, plaintiff's Rule 56(f) request is denied.

22       Plaintiff has otherwise failed to respond to the motion in violation of the scheduling order

23  and the court's local rule that he file either an opposition or a statement of no opposition to

24  defendants' motion.  *See* L.R. 78-230(m).  Nonetheless, the court independently has evaluated

25  the merits of the motion and concludes that as to some claims there is no genuine issue of

26  material fact and that the motion must be granted as to those claims.  As to other claims,

percipient witnesses present conflicting accounts as to material issues of fact which preclude summary judgment.

**IV.    Summary Judgment Standards**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Focus on where the burden of proof lies as to the issue in question is crucial to summary judgment procedures. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

1   essential to that party's case, and on which that party will bear the burden of proof at trial.  *See*

2   *id.* at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever

3   is before the district court demonstrates that the standard for entry of summary judgment, as set

4   forth in Rule 56(c), is satisfied."  *Id.* at 323.

5        If the moving party meets its initial responsibility, the opposing party must establish that

6   a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v.*

7   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To overcome summary judgment, the opposing

8   party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the

9   claim under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

10   *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and

11   genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving

12   party.[4]  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In this

13   regard, "a complete failure of proof concerning an essential element of the nonmoving party's

14   case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.   In attempting to

15   establish the existence of a factual dispute that is genuine, the opposing party may not rely upon

16   the allegations or denials of its pleadings but is required to tender evidence of specific facts in

17   the form of affidavits, and/or admissible discovery material, in support of its contention that the

18   dispute exists.  *See* Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n.11.  It is sufficient that

19   "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

20   versions of the truth at trial."  *T.W. Elec. Serv.*, 809 F.2d at 631.

21        Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the

22   proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587

23   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  However, the

24

25      [4]  On December 21, 2006, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154

26   F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

1   opposing party must demonstrate with adequate evidence a genuine issue for trial.

2   *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989).   The opposing party must do

3   so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence

4   presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  If the evidence presented

5   could not support a judgment in the opposing party's favor, there is no genuine issue. *Id.*;

6   *Celotex Corp. v. Catrett*, 477 U.S. at 323.

7          In resolving a summary judgment motion, the court examines the pleadings, depositions,

8   answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.

9   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

10  255.  All reasonable inferences that may be drawn from the facts placed before the court must be

11  drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

12  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

13  predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

14  Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

15  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

16  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

17  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

18  trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

19         On January 18, 2007, the court advised plaintiff of the requirements for opposing a

20  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154

21  F.3d 952, 957 (9th Cir. 1998) (en banc),  *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v.

22  Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

23         With these standards in mind, it is important to note that plaintiff bears the burden of

24  proof at trial over the issue raised on this motion, i.e., whether defendants used excessive force,

25  were deliberately indifferent to a serious medical condition, and/or deprived plaintiff of access to

26  the courts.

**V.     Analysis**

"As to materiality, the substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.  Here, plaintiff's action arises under 42 U.S.C. Section 1983 and the Eighth and First Amendments.  To prevail at trial, he must prove that the defendants deprived him of his Eighth and First Amendment rights while acting under color of state law.  To prove that defendants used force that violated the Eighth Amendment, he must prove by a preponderance of the evidence that they used force maliciously and sadistically solely for the purpose of causing plaintiff physical harm.  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  To prevail on his claim that he was denied constitutionally adequate medical care, plaintiff must prove that the defendants were deliberately indifferent to his serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  To prove that his First Amendment right of access to the courts was violated, plaintiff must prove by a preponderance of competent evidence that he was denied necessary assistance in preparing and filing a habeas corpus petition or section 1983 complaint and that the deprivation actually injured his habeas or section 1983 litigation efforts.  *Lewis v. Casey*, 518 U.S. 343, 351, 354, 356 (1996).

As discussed below, plaintiff has demonstrated a genuine factual dispute about whether, in the initial interaction between himself and defendant Kramer, Kramer used excessive force and jumped across a desk attacking plaintiff for no reason, but has failed to establish a triable issue of fact as to any of his other claims.

**A.  Excessive Force**

Defendants assert that plaintiff has not submitted sufficient evidence of excessive force to withstand the motion.  To demonstrate a triable issue of fact on the question, plaintiff must submit evidence upon which a reasonable jury could rely to find that excessive force was used.  As discussed herein, although the defendants have presented evidence upon which a fact finder could reasonably resolve the issue in their favor, plaintiff is a percipient witness to the events in

question.  If his version is believed with respect to his claim that defendant Kramer attacked him without provocation, a reasonable fact finder could conclude that excessive force had been used. Whether his verison is worthy of credence cannot be determined on this motion.  As a percipient witness, his credibility and that of the other witnesses who contradict him cannot be weighed on paper.

As a threshold matter, the law is clear that harsh conditions of confinement, including the use of force, will not violate the Eighth Amendment if the conditions are "part of the penalty that criminal offenders pay for their offenses against society."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Not every "malevolent touch by a prison guard" violates the Eighth Amendment.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Therefore, "*de minimis* uses of physical force" are not unconstitutional unless they are of a sort that is "repugnant to the conscience of mankind."  *Whitley*, 475 U.S. at 327.  Rather, what violates the Eighth Amendment is "the unnecessary and wanton infliction of pain," i.e., infliction of suffering that is "totally without penological justification."  *Rhodes*, 452 U.S. at 346.  Whether an Eighth Amendment violation has occurred depends upon the mental state of the defendant together with objective indicia surrounding the condition or suffering showing its relationship to the purpose of imprisonment.  *Id.*  The touchstone for any Eighth Amendment analysis, however, is whether the condition can be said to run afoul of "contemporary standards of decency. "  *Rhodes*, 452 U.S. at 347.

When force is used against a prisoner, the question of "whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 at 320-21; *see also Hudson*, 503 U.S. at 9. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," regardless of whether the resulting injury is significant.  *Hudson*, 503 U.S. at 9.  In other words, "the use of excessive physical force against

1  a prisoner may constitute cruel and unusual punishment when the inmate does not suffer serious

2  injury."[5]  *Id.* at 4.  "Otherwise, the Eighth Amendment would permit any physical punishment,

3  no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."  *Id.*

4  Therefore, the extent of injury suffered is just "one factor that may suggest whether the use of

5  force could plausibly have been thought necessary in a given situation, or instead evinced such

6  wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing

7  willingness that it occur."  *Id.*, at 7.  The following factors are relevant to determine whether the

8  force used was excessive: (1) the need to use force; (2) the relationship between that need and

9  the amount of force used; (3) the threat reasonably perceived by prison officials; (4) any effort

10  made to temper the forceful response, and (5) the extent of the injury suffered by the inmate.  *Id.*

11  With this background and these standards in mind, the court turns to the facts of this case.

12  **B.  Kramer's Attack on Plaintiff**

13  Plaintiff alleges that while he was sitting in a chair defendant Kramer jumped across a

14  desk and attacked him, knocking him over backwards.  Kramer disputes this and argues that

15  plaintiff cannot present evidence sufficient to demonstrate a material issue for trial over the

16  question.  Kramer does not submit a declaration, and indeed, it is plaintiff who bears the burden

17  of proof on the issue.  *Celotex Corp. v. Catrett*, 477 U.S. at 323 ("[W]e find no express or

18  implied requirement in Rule 56 that the moving party support its motion with affidavits or other

19  similar materials negating the opponent's claim.")  Relying on the declarations of St. Andre and

20  Davey, Kramer assert that any force used against plaintiff was minimal and necessary to control

21  plaintiff.

22  St. Andre asserts in his declaration that after interviewing plaintiff about his housing

23  situation, he ordered an (unidentified) officer to escort plaintiff from the office, but plaintiff

24  refused to stand of his own accord.  Instead, St. Andre asserts, plaintiff grasped the chair and

25

26      [5] Indeed, no lasting injury is necessary.  *Schwenk v. Hartford*, 204 F.3d 1187, 1198 (9th Cir. 2000).

1    wrapped his legs around the chair's legs.  Thus, St. Andre ordered Erlich, Dittman, Bortle and

2    Kramer to place plaintiff into a nearby holding cell.  Erlich, Dittman and Bortle had to remove

3    plaintiff's arms and legs to lift him from the chair and Kramer took the chair out from under him.

4         Thus, contrary to plaintiff's allegations, defendants describe a series of events in which

5    measured responses resulting in moderately increasing levels of force were both necessary and

6    reasonable.  If St. Andre's and Davey's testimony is credited and plaintiff's is rejected, Kramer

7    would surely prevail.  However, this credibility dispute cannot be resolved on paper.  Plaintiff

8    claims in a sworn statement that he was sitting in a chair talking with St. Andre at the time

9    Kramer allegedly attacked him.  In particular, he alleges that Kramer "launched across the office

10   table into plaintiff's chest, which caused him to fall backward."  Am. Compl., at 3.  Plaintiff

11   testified at deposition that he landed directly on his back and that the back of his head hit the

12   floor.  As a result, he felt "temporarily paralyzed," meaning he "couldn't hardly move" his lower

13   body.  Def's Ev., Ex. 9.  It is undisputed that plaintiff was in waist chains when escorted to St.

14   Andre's office and no evidence is presented to establish that they were removed prior to the

15   events in the chair.[6]  Thus, whether plaintiff was simply raised forcefully from the chair in

16   response to his refusal to get up and be removed as ordered or he was physically attacked, is a

17   disputed fact that is material to his claim of excessive force.

18        The next question is whether the dispute is genuine.  To establish a genuine dispute

19   plaintiff must present evidence upon which a reasonable fact finder could rely to find in his favor

20   on the factual issue in question.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252; *See also*

21   *Wool v. Tandem Computers, Inc.*, 818 F.2d at 1436.  As a percipient witness to the events

22   plaintiff's sworn statement is evidence and his verified complaint describes a markedly different

23   version of events.  While it is true that a party opposing summary judgment may not rely on his

24   _____

25        [6]  Kramer himself does not present testimony to deny or explain the details of plaintiff's
     allegations.  Indeed, on the paucity of evidence on the current record the court cannot even
26   determine at this point whether there was any need for force, and if so, at what level.

pleadings alone, *Celotex Corp. v. Catrett*, 477 U.S. at 324, the Ninth Circuit has held that a verified complaint is adequate to satisfy as a declaration or sworn statement for purposes of opposing a summary judgment motion.  *See McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n. 1 (9th Cir.1987) (per curiam) (a verified complaint may be treated as an affidavit that satisfies *Celotex*).  If plaintiff's version of the incident is believed a reasonable jury could find that the defendants used excessive force.

Defendants argue that plaintiff's claims are simply not believable.  They may well be correct.  But the credibility of plaintiff's sworn allegations as to what he heard, saw and experienced simply cannot be resolved on summary judgment.  The credibility issues presented by the sworn allegations by plaintiff on the one hand, and the conflicting declarations of St. Andre and Davey on the other must be sorted out at trial.

The court finds that there is a genuine issue about whether Kramer jumped across a desk and attacked plaintiff while plaintiff was talking with St. Andre.  Kramer's motion for summary judgment on this claim must be denied.

## C.  St. Andre, Ehrlich, Dittman, Kramer and Bortle Dragging Plaintiff

Plaintiff alleges that while he was on his back on the floor following Kramer's alleged attack, these defendants rolled him onto his stomach, dragged him across the office and placed him into a holding cage.  Defendants argue that this does not establish a genuine issue that they used excessive force.  Indeed, unlike the allegation of a physical attack by Kramer, plaintiff's account of  these facts does not include any suggestion that they struck him.  Rather, plaintiff alleges in his verified complaint that these defendants dragged him across the office to a holding cage after Kramer jumped across a desk and attacked him.  Thus, in plaintiff's version of events, he was on his back on the floor restrained in chains when the defendants dragged him across the office.  In general agreement with that account as to the material facts, St. Andre's declaration asserts that after interviewing plaintiff about his housing situation, he ordered an officer to escort plaintiff from the office, but plaintiff refused to leave.  Thus, St. Andre ordered Erlich, Dittman,

1   Bortle and Kramer to place plaintiff into a nearby holding cell.  Plaintiff submits no evidence

2   disputing defendants' assertion that plaintiff refused to get up and return to his cell of his own

3   accord.  Therefore, Erlich, Dittman and Bortle necessarily forcefully moved plaintiff to the cell

4   and placed him into it.  This dispute involves the question of whether doing so amounts to

5   excessive force.  It does not turn on conflicting accounts by the witnesses who were present.

6   The court finds that forcefully returning plaintiff to the cell under these circumstances was not an

7   excessive use of force.

8           In light of the lack of evidence to support plaintiff's position, no reasonable jury could

9   find excessive force on this record.  Even if plaintiff's account of an attack by Kramer is

10  credited, plaintiff has not disputed that he thereafter refused to return to his cell.  Undoubtedly,

11  some application of force was required to return him to his cell.  For these officers to have

12  dragged plaintiff across the office appears to have been a tempered response to the situation.

13  Again, plaintiff does not allege that the officers used any gratuitous force, such as hitting,

14  kicking, striking or the like.  The court therefore finds that there is no genuine issue for trial as to

15  these defendants and St. Andre, Ehrlich, Dittman, Kramer and Bortle are entitled to judgment as

16  a matter of law on this claim.

17      **D.  Davey's Handcuffing Plaintiff**

18          As noted, plaintiff claims that Davey caused him to be handcuffed with a single set of

19  cuffs in spite of plaintiff's medical authorization to be restrained in waist chains.  Davey

20  contends that plaintiff cannot demonstrate a genuine issue that handcuffing him constituted an

21  excessive use of force.  It is undisputed that plaintiff had medical authorization to be restrained

22  with waist chains, as opposed to handcuffs.  However, in his declaration, Davey asserts that

23  plaintiff refused to return to his cell and engaged in "resistive behavior;" thus, he ordered

24  plaintiff's waist chains replaced with handcuffs.   Davey asserts that he ordered guards to use

25  two sets of handcuffs.  Certainly a prisoner's refusal of a direct order to return to his cell justifies

26  the application of handcuffs in order to escort the prisoner to his cell, even if it aggravates a

1   medical condition.  Some force was necessary and handcuffing prisoners who are being moved

2   between cells and other locations is a routine measure not meant to be comfortable.  No evidence

3   of excessive force has been presented and thus an essential element of plaintiff's claim fails.

4   Accordingly, Davey's motion must be granted with respect to this claim.

5     **E.  St. Andre and Kramer Kicking Plaintiff's Legs**

6      Plaintiff alleges that after he had been handcuffed behind his back, defendants St. Andre

7   and Kramer kicked his legs from underneath him, and dragged him from the cage to the program

8   office.  In his declaration, St. Andre states that he did not hit plaintiff or use any force against

9   him.  Also in his declaration, St. Andre asserts that after plaintiff had been removed from the

10   cage and handcuffed, plaintiff persisted in his refusal to return to his cell.  It is important to note

11   that plaintiff has the burden of proof on this question.  Thus, to survive summary judgment

12   plaintiff must submit evidence of each essential element of his claim.  As noted above, it is

13   crucial to plaintiff's claim that the force used was not reasonably necessary under the

14   circumstances.  Plaintiff does not allege or submit any evidence about whether he was resisting

15   the defendants' authority when they took him to the ground by kicking his legs out from under

16   him, and then dragged him to the program office.  Whether plaintiff was resisting is a predicate

17   fact that the jury must have to determine whether force was necessary.  The form and extent of

18   plaintiff's physical resistance are facts essential to a determination of whether the amount of

19   force used was reasonable. Plaintiff's failure to adduce any evidence on these points is fatal to

20   his claim.  There is no genuine dispute for trial.  Defendants St. Andre and Kramer's motion for

21   summary judgment on this claim must be granted.

22     **F.  Kalbach Shackling and Pulling Plaintiff's Feet**

23      Plaintiff alleges that after he was dragged from the holding cage to the program office,

24   Kalbach shackled his ankles, rolled him onto his stomach and sat on his legs while pulling his

25   feet backwards into an "arm lock."  Kalbach relies on the declarations of Davey and St. Andre in

26   support of the contention that plaintiff refused to return to his cell and refused to walk after he

was handcuffed.  In light of his resistance, plaintiff was placed into a wheelchair to facilitate his transport.  Defendants have submitted evidence, which plaintiff does not contest, showing that plaintiff lunged from the wheelchair to the floor, where he kicked and thrashed.  Thus, in what appears to be a further measured response, Kalbach applied mechanical restraints to plaintiff's ankles.  Doing so while plaintiff was kicking and thrashing may well have resulted in pulling plaintiff's legs back into some sort of locked position but there is no evidence of a use of force greater than that needed to control plaintiff so he could be removed.  Plaintiff submits no evidence that in light of his thrashing and kicking that this measure was not a tempered and reasonably necessary response to plaintiff's resistance.

Plaintiff has not submitted evidence to genuinely dispute the version of events described by Davey and St. Andre and relied upon by Kalbach and it is clear that some force was necessary to restrain plaintiff.  Furthermore, as noted above, mechanical restraints are a routine measure in prison.  It appears that insofar as Kalbach held plaintiff's feet back while plaintiff kicked and thrashed in order to apply mechanical restraints, Kalbach tempered his response to plaintiff's physical resistance.  On this record a reasonable jury could not find that Kalbach used excessive force by shackling plaintiff's ankles to bring him under control.  Kalbach's motion must be granted as to this claim.

### G. Defendant Davey Sitting on Plaintiff's Back and Rocking

Plaintiff alleges that defendant Davey sat on his back and rocked back and forth, depriving him of oxygen, ignored his cries for help, laughed, threatened plaintiff with death and joked with his subordinates.  Defendant Davey asserts that there is no genuine dispute about whether he was the person on plaintiff's back at this point.  The parties agree that plaintiff was prone on the floor with his hands cuffed behind his back and his ankles shackled.  Davey does not deny any of these allegations.  However, plaintiff conceded at deposition that he could not see who was on his back.  Thus, the identity of the perpetrator at this point is a matter of speculation and an essential element of plaintiff's case fails.  Therefore, defendant Davy is

1    entitled to judgment as a matter of law on this claim.  His motion must be granted.

2    ## H.  __Defendants Johnson and Kramer__

3     Plaintiff also alleges that while Davey was on plaintiff's back, Johnson entered the office

4    and directed Kramer to take Davey's position.  Kramer then rocked back and forth on plaintiff's

5    back in the same manner as Davey.  As noted above, Kramer has not submitted a declaration

6    specifically denying plaintiff's allegations or explaining the context of the events.  Neither has

7    Johnson.  It appears that Johnson acted in his capacity as a supervisor.  A supervisor who did not

8    personally inflict the injury alleged is liable for the constitutional violations of his subordinates

9    caused them to act, or knowingly refused to stop them from acting, knowing or having

10   reasonable cause to know they would inflict injury,  *Redman v. County of San Diego*, 942 F.2d

11   1435, 1446 (9th Cir. 1991) (en banc);  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989);

12   *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th

13   Cir. 1978).  Here, the evidence is that Johnson was present and directed the alleged activity.  He

14   therefore is subject to liability if excessive force were used under his direction.  However, apart

15   from plaintiff's allegations as to the initial contact between he and Kramer, addressed

16   previously, plaintiff's allegations regarding the subsequent acts to restrain him once he began

17   kicking and thrashing do not establish a genuine dispute about whether there was a need for

18   force at that point.

19    It is undisputed that plaintiff was cuffed and on the floor.  However, it is also undisputed

20   that he had refused to return to his cell, and that in an effort to enforce the order that he do so he

21   was placed into a wheelchair.  Defendants' evidence shows that plaintiff threw himself to the

22   floor, kicking and thrashing.  Plaintiff offers no evidence to contest these facts.  Neither does he

23   submit any evidence that his level of resistance was such that the defendants could subdue him

24   without sitting on his back.  This undoubtedly caused discomfort but plaintiff has presented no

25   evidence that the defendants at this point responded to his resistance with gratuitous violence or

26   unnecessary levels of force.  There is no allegation of hitting, kicking or otherwise striking the

1    plaintiff.  In the absence of such evidence a reasonable fact finder could not conclude that

2    restraining plaintiff under these circumstances was excessive force.  Accordingly, defendants'

3    motion for summary judgment on this claim must be granted

4      **I.  Defendants St. Andre, Erlich, Fleming, Dittman  Kalbach, Williams, Givich and**

5           **Bortle**

6        Plaintiff makes similar allegations as to other defendants.  He alleges that St. Andre,

7    Erlich, Fleming and Dittman took turns sitting and rocking on his back.  He also alleges that

8    Kalbach, Williams, Givich and Bortle took turns sitting on plaintiff's legs while pulling his legs

9    back.  This claim suffers the same weaknesses as the previous claim.  Plaintiff has not submitted

10   any evidence disputing the fact that he physically resisted the order to return to his cell and that

11   some level of force was reasonably necessary.  Again, plaintiff fails to contest the extent of his

12   resistance, i.e., throwing himself to the floor, kicking and thrashing.  Given the apparent intensity

13   of his resistance and the absence of any allegation that plaintiff was struck or kicked, etc., a

14   reasonable jury could not find that the level of force used was unnecessary under the

15   circumstances.  Therefore, these defendants therefore are entitled to summary judgment as to this

16   claim.

17      **J.  Denial of Medical Care**

18       Plaintiff claims that he told defendant Dr. James about chronic back and shoulder pain

19   resulting from the attack, but Dr. James refused to evaluate or acknowledge plaintiff's condition.

20   Dr. James contends that plaintiff cannot demonstrate that there is a genuine issue about whether

21   he was deliberately indifferent to plaintiff's medical needs.  The medical care provided to

22   prisoners violates the Eighth Amendment where the facts show that defendants have engaged in

23   "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

24   needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A prison official is deliberately indifferent

25   when he knows of and disregards a risk of injury or harm that "is not one that today's society

26   chooses to tolerate."  *See Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Farmer v. Brennan*, 511

24

U.S. 825, 837 (1994).  The official must "be aware of the facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

*Farmer*, 511 U.S. at 837.   "[A] complaint that a physician has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment under the

Eighth Amendment." *Estelle*, 429 U.S. at 106. A medical condition that significantly affects an

individual's daily activities, an injury or condition a reasonable doctor or patient would find

worthy of comment or treatment, and chronic and substantial pain constitute serious medical

needs. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

*grounds*, *WMX Techs., Inc. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (*en banc*).  Deliberate

indifference "may be manifested in two ways. It may appear when prison officials deny, delay or

intentionally interfere with medical treatment, or it may be shown by the way in which prison

physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.

1988).

It is undisputed that on March 1, 2005, plaintiff requested medical attention for

"excruciating and numbing back pains and shoulder pains."  He also requested an independent

medical evaluation, a knee brace, back brace, an egg crate mattress and medication.  In response,

Dr. James interviewed plaintiff and examined him.  Plaintiff was restrained in waist-chains

during the appointment, thus limiting the defendant's ability to examine plaintiff's left shoulder.

However, there is no evidence that Dr. James was responsible for plaintiff's restraint during the

appointment.  From the examination that the defendant was able to conduct, he diagnosed

plaintiff with bursitis and tendonitis of the left shoulder and with chronic low back pain.  Dr.

James recommended exercises.  Plaintiff offers no evidence that the diagnoses were inaccurate

or that the prescribed treatments were in any way inadequate.  He certainly presents no evidence

of deliberate indifference.  Plaintiff's mere disagreement with the diagnoses and treatment is

insufficient to survive defendant's motion for summary judgment.  In order to create a genuine

issue for trial, plaintiff must submit evidence that the defendant knew that the treatment was

1  medically unacceptable under the circumstances, but administered it in conscious disregard of an

2  excessive risk to plaintiff's health.  *See Jackson v. McIntosh*, 90 F.3d 330, 331 (9th Cir. 1996).

3  Plaintiff has not submitted any evidence showing that here.  The court finds that there is no

4  genuine issue about whether Dr. James was deliberately indifferent to plaintiff's back and

5  shoulder pain.  Thus, defendant Dr. James' motion for summary judgment must be granted.

6       **K.  <u>Access to Courts</u>**

7       Plaintiff claims that Sears and Wright violated his right of access to the courts by

8  confiscating legal documents plaintiff needed in order to pursue actions pending in the federal

9  courts.  Sears and Wright contend that there is no genuine issue about whether plaintiff suffered

10  any injury.  To show a violation of the right, plaintiff  must demonstrate that the alleged

11  shortcomings hindered efforts to pursue a claim related to his conviction or the conditions of his

12  confinement.  *Lewis v. Casey*, 518 U.S. 343, 351, 354, 356 (1996).  Hinderance justifying relief

13  include, "for example, that a complaint he prepared was dismissed for failure to satisfy some

14  technical requirement which, because of deficiencies in the prison's legal assistance facilities, he

15  could not have known.  Or that he had suffered arguably actionable harm that he wished to bring

16  before the courts, but was so stymied . . . that he was unable even to file a complaint."  *Lewis*,

17  518 U.S. at 351.  Success on such a claim requires a plaintiff to demonstrate: (1) loss of a non-

18  frivolous or arguable claim; (2) act or omission by a prison official; (3) injury, i.e., frustration of

19  the litigation; and (4) a remedy that may be awarded as recompense, which is not otherwise

20  available in a future suit.  *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir. 2007).  However, a

21  litigant need not prove that he would have been successful on the merits of his claim.  *Phillips*,

22  477 F.3d at 1076.  Litigation will be deemed frustrated where there is proof that the prisoner was

23  hindered in his efforts to pursue his legal claim.  *Lewis*, 518 U.S. at 351.  The fourth element is

24  satisfied where the plaintiff has no independent tort cause of action for the violation of the right.

25  *Phillips*, 477 F.2d at 1079.

26  ////

1    Here, defendants Sears and Wright searched plaintiff's cell.  It is undisputed that plaintiff

2    had papers in his cell related to three actions pending in federal court.  However, it is also

3    undisputed that Plaintiff has not missed any filing dates in either *Chatman v. Tyner* or *Chatman*

4    *v. Early* as a result of his legal papers being confiscated.  In fact, the parties agree that no

5    defendants have been dismissed from *Chatman v. Early* because of the loss of documents in the

6    search.  With respect to *Chatman v. Felker*, plaintiff asserts that he failed timely to file

7    objections to findings and recommendations as a result of defendants having confiscated his

8    papers.  Thus, he asserts, the court granted defendant Rohlfing's motion to dismiss.  The docket

9    in that action shows that defendant Rohlfing moved to dismiss on October 17, 2006.  Plaintiff

10   timely filed an opposition to the motion, and on August 7, 2007, the magistrate judge assigned to

11   the case recommended that the motion be granted.  Plaintiff did not file objections, and on

12   October 1, 2007, the district judge dismissed the claims against defendant Rohlfing.  Plaintiff

13   submits no evidence that the confiscation of his legal papers hindered his ability to oppose the

14   motion to dismiss.  Indeed, he did oppose the motion.  Furthermore, he does not submit any

15   evidence that the confiscation affected his ability to file objections to the findings and

16   recommendations.  Also, he concedes that he maintained copies of the documents pertaining to

17   this case outside the prison.  It is notable that two years passed between when Sears and Wright

18   confiscated plaintiff's papers and when the claims against Rohlfing were dismissed. There is no

19   apparent nexus between the two, especially since plaintiff had ample time to obtain copies of

20   documents from wherever he maintained them outside the prison.  The court finds that there is

21   no genuine dispute about whether plaintiff suffered any frustration of his access to the courts or

22   his opportunity to litigate his claims as a result of the confiscation.  Accordingly, the motion for

23   summary judgment on behalf of Wright and Sears must be granted.

24       **L.  Qualified Immunity**

25       Defendants contend that they are entitled to qualified immunity because there is no

26   evidence that they violated plaintiff's constitutional rights.  They assert that they "acted

1   reasonably at all times" and "applied force only when necessary," were "ever mindful of the

2   potential danger that Chatman's resistance presented," and "tempered their response in

3   compliance with constitutional standards." Defs.' Mot., at 20:14-16. Otherwise stated, they

4   argue that since plaintiff has not satisfied his burden on summary judgment of presenting

5   evidence that they violated his rights, defendants are entitled to qualified immunity. They are

6   correct with one notable exception. The court has found that the summary judgment must be

7   granted with respect to all but one of plaintiff's claims, i.e., that Kramer used excessive force

8   when he allegedly attacked plaintiff in St. Andre's office. With respect to the claims for which

9   the court found there is no genuine issue for trial, there is no reason to inquire further into an

10  asserted defense of qualified immunity. *See Wilkie v. Robbins*, 127 S.Ct. 2588, 2608 (2007).

11  The court addresses the question of qualified immunity only with respect to plaintiff's remaining

12  claim against defendant Kramer.

13       Defendants are immune from suit for damages insofar as their conduct did not violate

14  plaintiff's clearly established rights. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). In deciding a

15  claim of qualified immunity, the court must first determine whether, in the light most favorable

16  to plaintiff, the facts alleged show defendants' conduct violated a constitutional right. *Saucier v.*

17  *Katz*, 533 U.S. 194 (2001).

18       Second, the court must determine whether the right defendants are alleged to have

19  violated was clearly established. The dispositive inquiry is whether it would be clear to a

20  reasonable prison official that "his conduct was unlawful in the situation he confronted," by

21  reference to decisional law agreeing that "certain conduct is a constitutional violation under facts

22  not distinguishable in a fair way from the facts presented in the case at hand." *Saucier*, 533 U.S.

23  at 201. Decisional law need not proscribe the exact conduct in question; it must only make the

24  conduct's unlawfulness apparent. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

25       The court could not find a genuine issue for trial without the first prong having been

26  satisfied.

1   With respect to the second prong, the court notes that the defense protects "all but the

2   plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335,

3   341 (1986).  The dispositive inquiry is whether it would be clear to a reasonable guard that his

4   conduct was unlawful in the situation he confronted.  *Saucier*, 533 U.S. at 205.  It is not

5   necessary that the exact conduct be proscribed at the time of the acts alleged.  *Hope v. Pelzer*,

6   536 U.S. 730, 739 (2002); *Mendoza v. Block*, 27 F.3d 1357 (9th Cir. 1994).  Rather, the question

7   is whether the "contours of the right" have been defined at a sufficient level of specificity such

8   that in light of the pre-existing precedent, the unlawfulness of the conduct is apparent.  *Anderson*

9   *v. Creighton*, 483 U.S. 635, 640 (1987).   At the time of the events giving rise to this action, the

10  law was clear that force used sadistically and maliciously for the very purpose of causing harm

11  violated the Eighth Amendment.  *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).  The *Whitley*

12  standard was clearly established at the time of the events giving rise to this action.  Under the

13  analysis used to apply that standard, it should go without saying that although a guard need not

14  wait to be attacked before using force, *see McCrary-El v. Shaw*, 992 F.2d 809, 812 (8th Cir.

15  1993), his unprovoked assault on a prisoner violates the Eighth Amendment.  *See Pelfrey v.*

16  *Chambers*, 43 F.3d 1034 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995) (allegations that guard

17  approached inmate, who was opening his mail, with a knife and restrained him and cut his hair

18  with the knife stated claim for excessive use of force).  Again, if plaintiff's testimony is believed,

19  Kramer attacked him without provocation.  On the record presently before the court and

20  assuming plaintiff's testimony is believed, it cannot be said that a reasonable guard in the

21  situation Kramer confronted would have believed that the conduct at issue here was lawful.  An

22  unprovoked attack on a prisoner who is seated and restrained is not part of the punishment

23  plaintiff was sentenced to serve.  Defendant Kramer is not entitled to qualified immunity.

24  **VI.   Conclusion**

25   For the reasons explained above, the court finds that there is a genuine issue for trial with

26  respect to plaintiff's claim that Kramer jumped across a desk and attacked him for no reason.

1   There is no genuine dispute for trial with respect to any of plaintiff's other claims.  Finally,

2   defendant Kramer is not entitled to qualified immunity.

3          Accordingly, it is ORDERED that:

4          1. Plaintiff's April 11, 2008, request to continue summary judgment proceedings

5   pursuant to Rule 56(f) is denied; and,

6          2. Defendants' February 1, 2008, request that the court take judicial notice is granted.

7          It further is RECOMMENDED that:

8          1. The February 1, 2008, motion for summary judgment be denied as to the excessive

9   force claim that Kramer jumped across a desk and attacked plaintiff and that the parties be

10   directed to file pretrial statements;

11          2. The February 1, 2008, motion for summary judgment be granted as to all other claims;

12          3. Plaintiff be directed to file his pretrial statement within 30 days of the order adopting

13   these findings and recommendations; and,

14          4. Defendant Kramer be given 15 days thereafter to file his pretrial statement.

15          These findings and recommendations are submitted to the United States District Judge

16   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after

17   being served with these findings and recommendations, any party may file written objections

18   with the court and serve a copy on all parties.  Such a document should be captioned "Objections

19   to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

20   specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

21   F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

22   Dated:  September 8, 2008.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE